FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 0 5 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LENSTON DAUGHERTY III

Plaintiff Pro Se,

V.

GOODWILL INDUSTRIES OF
NORTH GEORGIA

Defendant

CIVIL ACTION FILE NO.
1:25-CV-04001-MHC-WEJ

# RESPONSE TO ORDER TO SHOW CAUSE

The Plaintiff Lenston Daugherty III, Filed [Exhibit C-7) Civil Action No. 25CV5830
On June 13 2025

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

The Defendant Attorney Nichole Novocel and "Goodwill Industries Of N.E. Georgia
Inc." Filed a Notice Of Removal
Motion On July 13 2024

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA
&
IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

The Plaintiff Lenston Daugherty III, Filed A Response To Motion/ Motion to Remand, (before the 30 day response period -
in 28 U.S. Code § 1447 (c) ), On August 15 2025 (**Attached as Exhibit B, W/ Exhibit's C - C11**)

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

On August 16 2025 The Plaintiff Mr. Daugherty III received via Postal Mail An ORDER TO SHOW CAUSE, Civil Action
1:25-CV-04001-MHC-WEJ, Dated Aug 13 2025   Filed by The Honorable Walter E. Johnson   Magistrate Judge,

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RESPONSE TO ORDER TO SHOW CAUSE:

The Plaintiff asserted claims of Wrongful Termination/ Constructive Discharge, Hostile Work Environment/ Bullying,
Retaliation,and Lying/ Perjury/ Defamation "False Statements" ( Exhibit C-7 Civil Action 25CV5830 )   The Plaintiff can show
material evidence in the form of Company data, (paper work), Procedural Complaint forms, Exchanged Txt Messages, Audio/
Video, and a Witness to reinforce his claims. The Defendant "Goodwill" is also in possession of Video evidence which can clearly
and unequivocally prove the Plaintiffs claim of the particular Violent Act of Physical Intimidation which further then supports the
False Statements, and Lying/Defamation claim in the Plaintiffs Action 25CV5830. The same Video Evidence which occurred on
August 6 2024 is mentioned as being under a spoilage order by Attorney Ja'Net Sirles in Mr. Daugherty's original filing
seeking discovery in Civil Action No. 25CV5830 and submitted to The Superior Court Of Dekalb County on June 13 2025.

The Plaintiff intends to prove:

(A)  Retaliation, Wrongful Termination & Constructive Discharge

(Not Premised On VII, ADEA Or ADA)

(1)  That the Employer broke company protocol for in-company non-temporary transfer procedures, (a) Transfers are not allowed within 90 days of the issuance of a D.A.R. form or Disciplinary Action Report, which the Plaintiff had been issued on October 19 2024 only 20 days prior. (b)  Failure to conduct an interview by phone or in person between the Plaintiff (then a "Shift Supervisor / Closing Manager") at "Goodwill" and the General Manager of the proposed transfer Store location at North Lake. The process would normally take two weeks interview and for scheduling an efficient transition shift coverage between both locations. The   plaintiff had previous firs hand knowledge of the "Goodwill" transfer procedure because he had experienced it having transferred from the Piedmont Goodwill location to the Tucker Goodwill location the process was initiated on September 6 2023 and was completed on September 29 2023.and further   (c) Without consent or an Agreement by the Employee to relocate to the new location.

(2) In mid October of 2024   during a meeting with The District Manager Mr. Albert Cox the Plaintiff expressed his desire to transfer within the company. During discussion of location options Mr Daugherty declined consideration of the North Lake store location at which time District Mngr. Cox assured   the Plaintiff that he would not be transferred to that store location and that it, (the North Lake store), was "off the table". He was then given contact information and the password allowing access to the inner company job search site which he had been denied several times when he had previously requested this same information from his in store Management team. This information was essential to search for non publicly accessible employment options within the company.

(3) On October 28 2024   the Plaintiff notified District Mngr. Cox that the, ( Goodwill) Store General Manager Mr. Dwayne Wilson was in violation of agreed upon protocol governing the mid-shift Store Safe Change-Over procedure. This particular protocol measure allowing Mr. Daugherty an hour of office time from 12 pm to 1pm to count and verify the store safe and to also count ard distribute 3 - 5 Cash registers to the 2nd shift Cashiers without

interference from Mr. Wilson. This particular measure had been established as a result of a Violent act of Physical Intimidation and threat perpetrated by Mr. Wilson against the Plaintiff. during a meeting to discuss sick pay related to the Plaintiff Mr. Daugherty's on the job injury.

Mr. Wilson erroneously claimed to Mr. Cox, who was not present on the premises, that he had not followed the protocol because the Plaintiff Mr. Daugherty was behind schedule and "that cashiers we're waiting" but after verifying time clock data and the store camera data it was proven that Mr. Daugherty was on Schedule, and Mr. Wilson was at fault. No corrective action was taken towards Mr. Wilson.

(4) On Tuesday November 5 2025 Mr. Wilson for the third time again willfully violated the Store Safe Change-Over and Cash register assignment procedure, the Plaintiff notified District Mngr. Cox via text message of the repeat of the same infraction by Mr. Wilson. This time Mr.Cox did not respond.

(5) On Friday November 8 2025 three days after The Plaintiff's complaint, in an act of clear retaliation Mr. Cox contacted Mr. Daugherty via text message to inform the Plaintiff of his intention to forcibly transfer the Plaintiff to the North Lake store in absolute contradiction to the previous agreed upon assurance that he had given to Mr. Daugherty not to do so.

(6) During the next day, even after the Plaintiff refused the not only mutually agreed against, but procedurally incorrect transfer Mr. Cox at the behest of Mr. Wilson continued to pressure Mr. Daugherty via txt and email to transfer against his will. Mr Wilson marking through his name on the management schedule which had been posted through the month of November without proper consideration, notice. or protocol.

(7) On Sunday November 10 2024 only two days later while Mr. Daugherty was working his scheduled shift, Mr. Cox stated to the Plaintiff that if he did not clock out, immediately and report to the North Lake location that instant he would be written up with a DAR form for a Non Report Offense. The Plaintiff refused and continued to help customers at his cash register. An hour later

Mr. Cox threatened to call the police if The Plaintiff did not clock out and report to the North Lake store about another hour later Mr. Daugherty observed two police officers and a patrol car parked outside of the entrance of the "Goodwill " store Mr. Cox approached Mr. Daugherty stating that he would like for the Plaintiff to accompany him outside of the building to speak with the officers, the Plaintiff declined. about 15 minutes later the Officers accompanied by Mr. Cox interrupted Mr. Daugherty while he was mid-transaction with a customer demanding that he leave the premises or under the authority of Mr. Cox be charged with Trespassing, He was told to remove his belongings from the management office and forced to turn over his store keys. The District Manager then effectively utilized the service of police officers to forcefully remove the Plaintiff unjustly from employment during a scheduled shift.

Within three days of issuing a Complaint of an infraction perpetrated against himself by Store General Management the Plaintiff faced an act of retaliation by Company District Management acting in conjunction with Store General Management to carry out a wrongful termination. against Mr. Daugherty.

This infraction demonstrates a pattern of repeated behavior resulting in the Hostile climate referred to by the Plaintiff in (Exhibit's C , C-2 ,& C-7) the plaintiff faced retaliation followed by wrongful termination with the only option to maintain employment offered to the Plaintiff was to continue to work under the same District manager, Mr. Cox who was also the District Manager of the North Lake Store who had just went back on his word in order to forcefully transfer him against protocol and called the police to remove him with threat of a Trespass charge. Mr. Daugherty discussed these occurrences with "Goodwill" Regional Manager Yvette Peavey, and H.R. Chief Larry Bowers they reiterated the North Lake location as the Plaintiff's only option leaving Mr. Daugherty to resign on the basis of no confidence in his Direct, District and Regional managing leadership at the "Goodwill" Company.

The Plaintiff has in his possession the time stamped exchange of Txt Messages for the Protocol violation complaints, the

messages from the 3 days leading to the unlawful termination, and phone video footage of the forceful removal under threat of
trespass by the Plaintiffs former Employer "Goodwill".and 2 Police Officers.
(recorded by their on camera consent)

(B) Hostile Work Environment

The Plaintiff Mr. Daugherty transferred from the Piedmont " Goodwill" Store to the Tucker "Goodwill" Store on September
29 2023 Mr.Daugherty who is a K - 8 Art Teacher with 10 years experience also has 6 years of Retail Store Management
expirience, He had originally applied for Store Manager and was in line for promotion from Shift Supervisor to Store Manger
which comes with a salary starting at $48,000 a year, an increase of 14,000 a year from his then current hourly pay. He was
advised that his then current store was too busy and too fast paced to offer the proper completion of his training the Piedmont
"Goodwill" store where the Plaintiff was employed was the most profitable store in the region with three million dollars in
earnings that year. After several conversations with District Manager Albert Cox discussing expectations and the condition
of a 3 to 4 week remaining training period. Mr. Daugherty then Interviewed with the Tucker "Goodwill"
Store General Manager Dwayne Wilson. The process took a little over two business weeks from September 6 2023 to Sept 29 2023,
after which the Plaintiff agreed to relocate to the new location.

Within two weeks of transfer to the Tucker 'Goodwill" Store, the Plaintiff noticed a climate conducive to what could be described
as "hazing" . The General Manager informed Mr. Daugherty that his 3 to 4 week training period would now be extended to
3 months insisting that he would need more detailed training. He also informed the plaintiff that his overtime would be cut resulting
in a $200 loss of income per week. He was further told by the GM. D. Wilson that " A perfect work day is one where he does not
break a sweat", and that was something he could "aspire to" upon his promotion. He also advised the Plaintiff  to keep in mind that
"it is not important how hard you work here, it only matters how I perceive your work"

The plaintiffs fellow Management Team members including Assistant Manager's Stephanie Williams and Lisa Griffin along with the Store General Manager Dwayne Wilson together would routinely assign an inordinate amount of tasks as well as the majority of labor intensive duties to be completed by Mr. Daugherty.

Example's ;

(1)

(a) ASM S. Williams would at 1:00 pm, assign the plaintiff to process 100 donated Electronic items to be stocked in the store.
*A task that would take the full time Electronic processor tech the majority of an 8 hour workday to complete the quota being 121 devices per shift.

(b) Then at 3:00 pm ASM L. Griffin who is senior in authority to ASM S. Williams would order the Plaintiff to abandon his current task and to move to the donated Shoes and Accessories area where he would be tasked to complete the department specific quota of 200 pairs or 150 Accessories.

(c) Finally at 5:00 pm, GM. D. Wilson who is senior in authority to ASM. Griffin would order Mr. Daugherty to abandon his current incomplete task and to Stock 3 Carts of Books on to the store book shelves.

(d) This routine would set up an opportunity to reprimand the plaintiff at the beginning of the next days shift. GM D. Wilson would use derogatory terms and accusations, like "why are you so slow" and "why do you keep falling to make quota" He was further told by GM. Wilson that if the Plaintiff "didn't impress him" his promotion would be in jeopardy. The criticism would then be followed with the threat of a DAR "Write Up" or Disciplinary Action Report, "if his performance did not improve".

(2)

Mr. Daugherty was also, assigned the bulk of the labor intensive work which was supposed to be equally distributed among the four members of the management team, on a rotating cycle, to insure that no team member would be overly taxed. Instead for all 5 shift days the Plaintiff would be ordered against protocol, to be the sole

management team member responsible for performing
the "leader on duty" physical share of unloading the daily delivery truck.

For perspective, Each truck carried Donated items
contained within ;

6 to 8 Bulk Storage units on casters 500 lb's. each,
150 bulk bins stacked 4 high moved by hand truck 150 to 200 lb's. each.
5 Book and CD DVD bins on casters 150 to 200 lb's. each
as well as 5 to 10 pieces of assorted Furniture.

(3)

In December of 2023 an incident occurred in which the Plaintiff's completed
work in a store display area had been dismantled
and he was subsequently reprimanded for neglecting to complete it by GM.
Wilson. The Plaintiff discovered later that GM.
Wilson was the party responsible for it's removal. Mr. Daugherty brought the
incident to the attention of H.R. Representative
Alayna Robinson, The Plaintiff asked Ms. Robinson in confidence if she could
review the store surveillance footage from the
area. Ms. Robinson declined to do so stating that "if there was evidence in the
footage implicating Mr. Wilson" she could be
required to testify against him "which could cost her her job" She stated further
that she was sorry but that Mr. Daugherty's
concerns "just were not worth it". H.R. Rep. Ms. Robinson did however break
confidence to inform GM. Wilson of the
Plaintiff's request.
After which Mr. Daugherty faced retaliation for having discussed the incident with
the H.R. Rep. U. Robinson. Threats of
impending DAR "write up's" soon increased and from that day on Mr. Daugherty
was excluded from the regular
weekly Management Team Lunches.

(4)

On another occasion ASM S. Williams and GM. D. Wilson opened the store
together at 8:00 am, when the Plaintiff arrived
to start his shift at 12:00 pm he was informed that the safe was short by 20 dollars.
The Plaintiff, Mr. Daugherty had done

a beginning of day count at 12:00 pm and an end of day count at 8:00 pm the day before having left the adding machine printed tape receipt in the safe which showed clearly the exact amount of bills in the safe. No one else had access to the safe other than the Plaintiff,  Ms. Williams and Mr. Wilson. GM. Wilson stated that acting as witness to one another prior to the Plaintiff's arrival that both he and ASM. Williams had counted the safe both finding the same result thus clearing themselves of suspicion. Mr. Daugherty was then directed to count the safe under the observation of GM. Wilson and ASM Williams, he also found a   deficit of 20 dollars less than the total he had left indicated on the adding machine receipt dated and initialed by him the evening before.As both accusers out ranked the Plaintiff in authority and taking into account that they had cleared one another of any wrong doing.

The implication was then directed towards Mr. Daugherty as being the party responsible for the missing money. He was questioned by General Manager Wilson, as to why the funds were missing, and told that any future occurrences involving missing funds, would constitute a fireable offense. Mr. Daugherty stated his assurance that he stood by his count from the previous evening and that he was not responsible for the safe's deficit as he had maintained a perfect record of accuracy. He was offered no other option except to replace the missing funds himself. The Plaintiff contends that only Ms. Williams or Mr. Wilson could have removed the missing money from the safe in an effort to entrap him with a fireable offense. As a counter measure Mr. Daugherty enlisted a closing shift sales staff member as a witness to stay with him in the office to watch him count, verify and lock the safe and office to prevent being accused of taking funds from the safe again.

* The Plaintiff is capable of calling witnesses from amoung the sales staff to corroberate his claim that he took the irregular practice of enlisting them as witnesses to his end of shift Safe Counts for that period.

On January 1 2024 The Plaintiff   suffered a serious back injury while on the job.

Mr. Daugherty was prescribed by the Company "Goodwill" Workman's Compensation Doctor
Ruben Sloan MD. Restricted Duty Status,   The details of which were that the Plaintiff would be required to sit for
50 % of his 8 to 9 hour shift, To perform No Bending and To lift no more than 10 pounds occasionally during his shift.
**(Exhibit C-11)** The Plaintiff was also prescribed Medications including,
Cyclobenzaprine, Tizanide, and Ibuprofen 800 oral
and Lidocaine, and Diclofenac topical.

(5)

The Plaintiff was immediately pressured to violate his restricted duty guidelines he was told by his 3 fellow Management
Team members that He was cleared to lift 25 pounds even though he had presented documentation from the Company
"Goodwill" referred Doctor, prescribing 10 pounds and only occasionally.

On Monday January 29 2024 which was 99 Cent Day the busiest sales day of the week at the store "Goodwill". On this
particular day the store was short staffed by half because of 4 Employee's who did not come in to work,. The Plaintiff
was the only manager on duty with a staff of 3, Mr. Daugherty was tasked to accomplish the workload of 8 employees
with only 4.   The Plaintiff was the sole staff member trained on the operations of donation intake procedure, therefore
despite his injury and accompanying restrictions Mr. Daugherty handled the workload to the best of his ability, and left
the work area in an above manageable condition. The plaintiff also contacted GM. D. Wilson via Txt to make him
aware of what to prioritize for the the next days opening.

For Context;
The Donation Intake door position is the most labor intensive position in the Company "Goodwill"
The Donor Intake Specialist position generally requires 2 employees per shift with a third overlapping for a mid day shift

to move larger items like Furniture and Exercise Equipment as well as to act as a runner during the peak hours of the day moving items to the different processing areas of the store vital to avoid the possibility of donated goods becoming "piled up", which is not uncommon on busy days.

*The Plaintiff can present time stamped dated photographs of the store and production areas from this day.

(6)

On January 30 2024 The Plaintiff was reprimanded by GM. D. Wilson for what he described as "Careless Job Performance" for not performing labor intensive tasks which as a result of his on the job injury, Mr. Daugherty was no longer capable nor required to perform. GM. D. Wilson failing to aknowledge the 4 employee staff deficit and refusal to consider the Plaintiffs on the job injury. stated to Mr. Daugherty that he should consider this a "Verbal Warning" and told further that a DAR Write Up would be impending.

On February 7 2025   Mr. Daugherty took a Non Paid   leave of absence to care for his Wife who was undergoing Cancer Treatment, Mrs. Daugherty Subsequently Passed on February 12 2025. Mr, Daugherty Extended his leave to Bereavement leave also Non Paid   till April 25 2025, (*The "Goodwill" Company does not offer Family Emergency, or Bereavement pay.)

(7)

Upon Mr. Daugherty's return to work he was confronted with what could be described as a concerted effort to unjustly remove him from his employment, It was very apparent that due to his on the job injury, and the related physical restrictions the Plaintiff could no longer be assigned the bulk of the labor intensive work load, The Plaintiff contends that the at work climate shifted from one of hazing and an inequitable work load to one of an intent to eliminate Mr. Daugherty's employment

altogether.

On May 10 2025 Store General Manager Dwayne Wilson filled a Disciplinary Action Report against the Plaintiff the report was the culmination of several threatened unwarranted "write ups". which had become a weekly occurrence.

The form cited three occasions where GM. D. Wilson claimed erroneously that Mr. Daugherty had displayed a "Careless, disregard towards the completion of his assigned tasks" when in fact the opposite was true. All three instances were directly based on Mr. Daugherty's unwillingness to violate his Workman's Comp Doctor prescribed work restrictions.

All of the instances also occurred due to a shortage of staff, with two occurring at the Donation Intake Door. The first one took place on a day when the store was was operating with 2 cashiers one sales floor staff person and the Plaintiff. on this day the Donation door took in 15 % more donations than usual. The store also closed above budget in profits both days. Mr. Daugherty managed the sales floor,supervised 2 - 3 cashiers secured the back of store production areas and maintained the donor door area, while working within his prescribed restrictions. The Plaintiff was never the less reprimanded aggressively in the following days by Mr. Wilson, for having not moved furniture items, and specifically for not having emptied the 2 full 350 lb (4 bushel) capacity box truck refuse bins. all well above his prescribed restricted 10 pound limit.

The Plaintiff disputed the Disciplinary Action Report Immediately and Submitted an Alternative Dispute Resolution Form to the "Goodwill" Regional Management Office on June 2 2024. After investigating the the DAR form Submitted by GM. D. Wilson as well as the ADR form Submitted by Mr. Daugherty, Regional Manager Yvette Peavy made the decision to throw out GM. D. Wilson's meritless DAR form removing it from the Plaintiffs permanent folder, a very uncommon occurrence.

(8)

On June 12 The Plaintiff Met with the "Goodwill" Store District Manager Albert Cox and the Company HR. Rep upon their request to Discuss Concerns related to ADR form which was still being processed at the time. After the meeting it was time for Mr. Daugherty's usual lunch break. But on this occasion the other Manager on duty was GM. D. Wilson who decided with no explanation to leave early. not allowing the Plaintiff his 1 hour lunch break, which forced him to work a 10 hour day with no break.

Mr. Daugherty informed DM. A. Cox via txt message of the retaliatory gesture perpetrated towards him by GM. D. Wilson a clear violation of the store policy. There was no action taken. Further more at the end of the week the plaintiff was then pressured several times to give up overtime pay for the hour he was deprived of his lunch break and to erase it from the computer time clock to prevent the store from showing overtime.

* The Plaintiff can present the Full ADR form from 06/02/24 and the time stamped txt message exchange from originally reporting this same incident to DM A. Cox on 06/12/24

(9)

On July 24 Mr Daugherty was informed by ASM. L. Griffin that his Annual review needed to be scheduled with GM. Wilson before the end of the week. The Plaintiff contacted DM. A. Cox and requested that he perform the review instead of Mr. Wilson citing the DAR form issued by Mr. Wilson, the ADR form issued by the Plaintiff, both were still pending, as well as the aforementioned recent verbal complaint from 06/12/24.

DM. Cox refused to intervene allowing GM. Wilson to conduct Mr. Daugherty's review. Mr. Cox offered to sit in and to allow, HR Rep Joseph to also attend as witness during the review GM. D. Wilson, gave a derogatory review stating that the Plaintiff "did not even understand his job", even though prior to his injury the Plaintiff had maintained a higher production and sell through average than even the GM. himself had. Even though he argued in disagreement, DM. A. Cox and HR. Rep Joseph allowed the negative review Mr. Daugherty was denied his promotion and assured no more

than a raise of 12 cents.

* The Plaintiff can present spread sheets showing his production and sell through statistics from this period.

(C) False Statements Lying   / Defamation Of Character

(1.)

On August 6 2024 the Plaintiff Met with HR Rep Wayne Cooper and GM. Dwayne Wilson to discuss an unpaid sick day request which had been denied Mr. Daugherty by Mr. Wilson during the meeting the Plaintiff explained that his Workman's Comp Doctors appointment on July 11 2024 had included a stress test, a three sixty X-ray and a new pain medication, all of which had left him feeling too ill to perform his shift on next day July 12 2024 this was why he called in sick that day which was something he rarely ever did which is why he had an over abundance of PTO and Sick Leave hours accumulated.

Mr. Wilson Stated that he "Did not know what kind of game he was playing " but he did not believe, Mr. Daugherty's claims. He further stated that he would not allow the Plaintiff his paid Sick Day. as Mr. Wilson finished his statement and was about to leave Mr. Daugherty stated to him your decision is unfair and has already caused me to miss a bill payment, but karma is real. GM. Wilson then asked the Plaintiff what he said, the Plaintiff then repeated "karma is real" At this point GM. Wilson who was standing and is 6 ft 8 charged at Mr. Daugherty who is 5 ft 8 and was sitting Mr. Wilson repeatedly jabbed his index finger at the Plaintiffs face yelling at him to do something to stop him, HR Rep Cooper who was seated beside Mr. Daugherty then stood up to restrain Mr. Wilson pushing him back away from the Plaintiff.   Mr. Daugherty then stood up backing away from Mr. Wilson who the charges towards the Plaintiff a second time putting his finger in Mr. Daugherty's face a second time and reiterating his threat. when Mr. Cooper steps in front of Mr. Wilson a second time he states that he is leaving for the rest of the day and exits the store without completing the

rest of his shift.

In **(Exhibit C-7)**   Civil Action   Complaint - 25CV5830 June 13 2024, The
Plaintiff Mentions;

" A Violent Act of Physical intimidation against Mr. Daugherty,
Aggravated by D. Wilson's Lying / Perjury (Defamation) about
the stated incident on Official EEOC Documentation to an
EEOC Investigator, D. Wilsons false statements could damage
Mr. Daugherty's ability to gain future employment or benefits."

"This can be proven in Mr. Daugherty's favor by Video Evidence
in possession of GING "Goodwill" Industries Of North GA. Inc.
and Under Spoilage Order issued by Attorney Ja'Net Sirles".

(2.)

In Civil Action 25CV5830   The Plaintiff refers to Official EEOC Documentation
and an EEOC Investigator, (Mr. Trey Pyle),
Not in any reference to Titles VII, ADEA, and ADA, **(Exhibit B pages   B-3 thru
B-5}** but only in reference to the
False Statements made by GM. D. Williams about The Plaintiff to Mr. Pyle on
page 3 of the Official Determination
Document **(Exhibit C- 10)**, dated March 18 2025

**(Ex. C- 10)** which reads, as follows;

" Mr. Daugherty commented, "Karma is a bitch" to which Mr. Wilson turned
around to address Mr. Daugherty while pointing his finger. Mr. Daugherty
then jumped out of his chair and said, " You gonna hit me, hit me," at
which point Mr. Cooper stepped between Mr. Daugherty and Mr. Wilson
to de-escalate the situation."

(3.)

Mr. Daugherty rejects this account as patently false, and a clear example of libel
expressed in print to a third party and damaging
and defaming to the Plaintiffs reputation, profession, and business as a Retail
Manager.
Further the plaintiff contends that had he used the profanity, ("bitch")and "jumped

from his chair aggressing towards Mr. Wilson"
while instigating physical confrontation, "hit me" as erroneously stated by Mr.
Wilson the Plaintiff would have been immediately issued
a Disciplinary Action Report without hesitation.
For further context The Plaintiff Mr. Daugherty stands 5 feet 8 inches tall and his
last long term Employment was 10 years as
a K - 8 Art Teacher. in contrast Mr. Wilson stands 6 feet 8 inches tall and is a
Former Athlete who greatly out weighs Mr. Daugherty.
The Plaintiff also suffered a serious on the job injury to his back on January 1 2024
**(Ex.C - 11)** which
would've greatly hampered his ability to have "Jumped out of his chair"
aggressively as falsely stated by M. Wilson.

Mr. Daugherty contends here and in The Plaintiffs original Civil Action 25CV5830
June 13 2024 That Mr. Daugherty's
account of the Violent Act of Physical Intimidation towards himself  can be
proven beyond doubt by Video footage,
under Spoilage Order by Attorney Ja'Net Sirles and in possession of  "Goodwill"
Industries of North GA. Inc.


(D) Cont. Hostile Work Environment

On August 9 2024 Mr. Daugherty met with District Manager Albert Cox and HR.
Rep Wayne Cooper, the Plaintiff had
requested his birthday off but GM. Dwayne Wilson refused to allow the Plaintiff
the day off. Mr. Daugherty had requested
the day off in writing on a company Time Off Request form posted on the office
bulletin board 19 days in advance.

Mr. Wilson stated to Mr. Daugherty, (in a conversation two weeks before the
meeting on August 6 2024) a new rule which
required that all requests for time off must be made 21 days in advance, and he the
Plaintiff was 2 days off. At which time
Mr. Daugherty expressed to GM. Wilson, ASM. Griffin, and ASM. Williams the
significance of the occasion stating that it
would be the first Birthday that he would celebrate since the loss of his wife of 30
years, (at that time only 7 months prior),
and that He would like to Have the opportunity to spend it with his Daughter.

When all three of his fellow management team members collectively declined to accommodate, the Plaintiff contacted District Manager Cox on August 3 2024 to request that he assign a Manager from one of the other 9 stores in his district to fill in for him, a practice which was fairly common within the Company,GING "Goodwill".

When Mr. Cox and Mr. Cooper arrived at 2:40 pm They informed Mr. Daugherty that they had a replacement manager who agreed to fill in to finish the remainder of  the Plaintiffs shift ending at 9:00 pm. Mr. Daugherty thanked Mr. Cox at which point Mr. Cooper asked if the Plaintiff needed anything and then offered him a "GING" company pamphlet with the phone number of a Grief  Councilor hot line. Mr. Daugherty thanked Mr. Cooper for the gesture and assured him that he was ok.

Mr. Daugherty then asked who the replacement was to which DM. Cox stated "You don't know him". The Plaintiff then asked when will the replacement be arriving? Mr. Cox replied "Any time now" and then stated to the Plaintiff, "But You can leave now" Mr. Daugherty responded by stating to Mr. Cox and Mr. Cooper that he would leave as soon as his replacement arrived.

Mr. Cooper then stated there is no need for you to wait ASM Griffin (who had started her shift at 8:00 pm.) can cover until your replacement comes. The Plaintiff stated that he would rather wait. Mr. Daugherty exited the office and returned to work behind his cash register. A half hour later Mr. Cox called Mr. Daugherty back in to the office where Mr. Cooper stated " Listen we're giving you what you wanted, and We want you to leave now and go enjoy your day". the Plaintiff sensed that something seemed off and decided to call his Workers Comp Lawyer Ja'Net Sirles for advice,

Attorney Sirles, Advised Mr. Daugherty, that he should by no means leave the Store without a signed,and dated statement from the District Manager stating that he "the Plaintiff" is leaving with permission and will face no

repercussions for doing so. The   Attorney added that she had seen this exact scenario before and that it was a ploy used to trick the Employee into walking off the job, which would constitute a "Job Abandonment" offense, followed by a Disciplinary Action Report or Dismissal.

Mr. Daugherty informed Mr. Cox and Mr. Cooper of  Attny. Sirles's advisement. They initially refused only to approach The Plaintiff an hour later at 5:15 pm when Mr. Cox and Mr. Cooper both signed, (**Exhibit C - 12**) a hand written document stating that The Plaintiff would face no Negative Consequences for leaving 4 hours early.

Mr. Cox also informed ASM. Lisa Griffin and Mr. Daugherty that there was no replacement coming and admitting that there had been no replacement scheduled.

The Plaintiff calls attention to the participation of "Goodwill" Human Resources Rep. Mr. Wayne Cooper in this incident, a clear attempt to mislead the Plaintiff into committing an offense which would compromise his employment, this occurred only 3 days after Mr. Cooper witnessed the "Violent Act of Physical intimidation" against Mr. Daugherty committed by GM. Dwayne Wilson at the meeting on August 6 2024. Mr. Daugherty sites this as an example of the hostile state of the working environment existing at this particular "Goodwill" Store and District.

## (E) Destruction Of Property

### (1.)

On October 7 2024 at 9:05 PM. The Plaintiff was leaving work with 4 other Employees as he was locking the Front door of the store three of his coworkers yelled to him "Hey Your Tires Are Flat" Mr. Daugherty rushed over to find that three of the four tires on his car were completely flat. His Coworker Mrs. Paula Doherty retrieved a portable tire inflator from her car. Using it the Plaintiff was able to get enough air into the three flat tires using the portable compressor

to drive safely to a nearby Gas Station to add more air to then drive home.by that time it was already past 11:00 PM.

On Tuesday October 8 2024 the next day Mr. Daugherty prepared to leave for work and found his tires all except for the drivers side front tire all flat. Mr. Daugherty drove on the remaining rubber and   his vehicle's tire rims to the nearest Gas Station to refilled his tires so that he could get to work on schedule, anticipating that he would be written up for Lateness/Tardiness. Once at work the Plaintiff informed ASM S. Williams of the damage to his vehicle, and of the urgency at hand to repair or replace the damage. Mr. Daugherty went to the nearby Firestone location.
While at the Auto Shop Tuesday October 8 2024 He informed   DM. Al Cox via phone and Txt Msg. of the damage to his vehicle.The Plaintiff forwarded pictures of the damages and receipt to DM. A. Cox
He asked Mr Cox if there was any insurance held by the company that would cover damage to Employee property on company premises. He also expressed to   Mr. Cox that there may be footage of the perpetrator responsible.
on the store surveillant cameras, Mr. Cox stated that he would "Look into it"
The Plaintiff also informed DM. Cox that the Mechanic informed him, that based on his experience he had deduced that the Plaintiffs tires had been punctured with a sharp tool of some kind. demonstrating as much to Mr. Daugherty while holding one of the tires partially submerged in trough of water pointing out the holes and stating that "someone did this on purpose" and that the tires were a total loss.

* The Plaintiff filmed this exchange on Oct. 8 2025 with his cell phone and has retained it as evidence.

Mr. Daugherty had no choice but to replace the irreparable tires himself. The total cost to replace the three destroyed tires was $ 516. 81 which was almost a weeks pay for the Plaintiff. When the Plaintiff returned to work he informed the Tucker Station Security Guard Curtis Jones of the Damage to his tires. As it had taken 3 hours to for the repairs Mr. Daugherty immediately put in a request to use 3 hours of his surplus PTO time to

cover the deficit to his weekly pay
This request was refused by GM. D. Wilson with no explanation.

(2.)

On October 18 2024, The Plaintiff met with HR. Rep Wayne Cooper and DM. Albert Cox,
During the meeting Mr. Daugherty pointed out the exact cameras and exact time and date where the destruction
of his property had taken place, reiterating his request for an investigation. He also requested that company
insurance reimburse him. No action was taken by Mr. Cox or Mr. Cooper on either request.

* The Plaintiff recorded this aforementioned conversation on October 18 2024, and has retained it as evidence.

A week later Mr. Daugherty met with the Company "Goodwill" Director Of Asset Protection Mr. Steve Johnson
explaining that on the evening of   October 7 2024 the he had as usual deliberately parked as close to the area within
the limited sight line of the outside facing cameras within the parking lot a practice that was routine for
GM. Dwayne Wilson, ASM Stephanie Williams, ASM Lisa Griffin, as well as Mr. Daugherty and He further stated
that the only tire that was not slashed was the one that was in view of parking lot facing surveillance cameras, and
further that he and his 3 other Management Team Members were the only ones who would have had knowledge of that.

Director of Asset Protection Mr. Steve Johnson
Stated that he could not access the surveillance footage because it had been removed from the store, and was
therefore no longer within his of his department.

To The Attention Of,
The Honorable Magistrate Judge,
Walter E. Johnson.


The Plaintiff Pro Se, Lenston Daugherty III ,Has Taken the Direction of the Court
and Has Heeded that Within this;
Response To Order To Show Cause, September 5 2025   and   Response To
Motion/Motion To Remand, August 15 2025
Has Respectfully Responded to All Aspects Of  the Defendants Motion with
Factual Content Stating Highly Credible and Available
Evidence to Be Presented In Favor Of The Plaintiff.


Mr. Daugherty would like to express to the Court that his Pro Se Status is one of
default and not one
of choice the Plaintiff has sought out representation but of the Pro Bono Firms, he
contacted he was advised that they were already
"too busy" to accommodate and of the Commission in advance Firms the fee's
were not affordable,
Mr. Daugherty currently seeks Pro Bono Representation.


Dated September 5 2025          Plaintiff, Lenston Daugherty III
                                lenstondaugherty@yahoo.com
                                985 Park Gate Place
                                Stone Mountain,   Ga 30083
                                Telephone: 508.627.2257